# ANNA P. LUCKES v. CLINTON E. LUCKES.[1]

June 17, 1955.

No. 36,580.

[1]Reported in 71 N. W. (2d) 850.

*Howard H. Gelb* and *Robert Weiner,* for appellant.
*Charles H. Weyl,* for respondent.

MATSON, JUSTICE.

Defendant husband appeals from a judgment granting a divorce to the plaintiff and awarding her custody of the minor child, monthly support money of $62.50, and attorney's fees and costs.

This action for divorce on the grounds of desertion was commenced by plaintiff on February 25, 1954, in Ramsey county, Minnesota, against the defendant, who at that time, and during the entire course of the litigation involved herein, was on active duty as a captain in the United States Army stationed at Springfield, Illinois. On March 26, 1954, defendant filed his answer to plaintiff's complaint, and the case was set to be heard on May 31, 1954. Subsequently, on May 22, 1954, defendant filed a motion under the Soldiers' and Sailors' Civil Relief Act *to stay all proceedings* therein on the grounds that he was then in the military service, that his duties precluded him from appearing at the trial on May 31, 1954, and that he would be prejudiced by his inability to appear and testify in his own behalf. Defendant's supporting affidavit stated:

"That this affiant is presently assigned and has been made a member of a Board of Officers who are presently engaged in giving attention to confidential matters which will of necessity require his presence at the convenience of the Presence of said Board, * * *.

"That this affiant is also on special orders assigning him to the investigation of facts and circumstances surrounding the injury of certain enlisted men involved in accidents in this area which requires his presence until said investigations have been completed."

An affidavit of defendant's immediate superior officer was also filed in support of the motion to corroborate defendant's statement of inability to be present in Minnesota for the trial on May 31, 1954.

A hearing was not held on this motion, apparently on the assumption that a settlement would be consummated between the parties. But on June 7, 1954, on application of the plaintiff, the court issued an order to show cause (returnable on June 11) why the above case should not be heard on or before June 29, 1954. Plaintiff's motion was supported by an affidavit of plaintiff's attorney which set forth the following facts which are undisputed by the defendant: That on March 3, 1954, immediately after the commencement of suit by the plaintiff in the present action in Minnesota, defendant commenced an independent action for divorce in the circuit court of Sangamon county, Illinois, in which he was named as plaintiff and the plaintiff herein was named as defendant; that on March 31, 1954, plaintiff herein served and filed an answer in the Illinois action alleging the pendency of the prior action in Minnesota; that it was agreed that both actions would be held in abeyance and an effort would be made to effect a property settlement agreement; that on June 5, 1954, plaintiff's attorney was notified by defendant's attorney that the Illinois case would come on for trial in Springfield, Illinois, on June 29, 1954, and that defendant husband herein would be available in the Illinois action on that date; that no property settlement had been agreed upon; and that the negotiations therefore had not been broken off prior to said notification.

On June 11, 1954, the order to show cause was heard, and there being no appearance by the defendant, the Minnesota district court ordered the trial of this case to be set for June 21, 1954. On June 17, 1954, defendant filed a second motion for a stay of proceedings under the Soldiers' and Sailors' Civil Relief Act with supporting affidavits stating that he had been notified of the ruling of our district court setting the date of trial as June 21, 1954, and setting out substantially the same reasons for his inability to appear and defend that were listed in the affidavits supporting his earlier motion for a stay of proceedings.

Our trial court on June 21, 1954, *after having informed counsel for defendant three days earlier that the motion would be denied,* decided that the ability of the defendant to conduct his defense was not materially affected by reason of his military service. Defendant's

motion to stay the proceedings was therefore denied. No appearance being made by defendant, judgment was entered against him awarding plaintiff the custody of the parties' minor child, maintenance, and attorney's fees.

On this appeal, defendant seeks reversal of the order of June 21, 1954, and reversal and vacation of the judgment and decree of June 21, 1954.

Did the trial court err in denying defendant's motion for a stay of proceedings under § 521 of the Soldiers' and Sailors' Civil Relief Act?[2] The act is to be construed in the light of the purpose for which it was enacted and the entirety of its language, subject to the controlling decisions of the United States Supreme Court. Declaratory of the act's purpose is § 510[3] which provides that the enforcement of civil liabilities, *which may prejudice the civil rights of persons in the service*, shall be suspended *in order to enable such persons to devote their entire energy to the defense needs of the nation*. Pursuant to such purpose it is evident that the act was not intended to provide for the suspension of the enforcement of any civil liabilities unless such enforcement would *prejudice* the soldier or sailor. It follows that, *absent prejudice to the soldier or sailor*, there is no justification or requirement for a stay of legal proceedings. This purpose finds expression in § 521 which provides that the action or proceeding shall be stayed *unless* the court in its opinion finds that the soldier or sailor's ability to defend or prosecute the action *is not materially affected* by reason of his military service. Clearly, the element of *prejudice*, which is essential to the granting

[2] 54 Stat. 1181, 50 USCA Appendix, § 521. This section (originally enacted in 1940 as § 201) reads as follows:

"At any stage thereof *any action* or proceeding in any court *in which a person in military service is involved*, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, *in the discretion of the court* in which it is pending, on its own motion, and *shall*, on application to it by such person or some person on his behalf, *be stayed* as provided in this Act, *unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.*" (Italics supplied.)

[3] 54 Stat. 1179, 50 USCA Appendix, § 510.

of a stay, finds expression in the words *not materially affected.* Whether such prejudice exists to a *material extent* which justifies granting a motion for a stay of proceedings is to be determined by the court as a matter of judicial discretion.[4]

In Boone v. Lightner, 319 U. S. 561, 575, 63 S. Ct. 1223, 1231, 87 L. ed. 1587, 1596, rehearing denied, 320 U. S. 809, 64 S. Ct. 26, 88 L. ed. 489, the United States Supreme Court established certain guideposts for the exercise of that discretion when it said:

"The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the service. Absence when one's rights or liabilities are being adjudged is usually *prima facie* prejudicial. But in some few cases *absence may be a policy,* instead of the result of military service, and *discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use.*" (Italics supplied.)

■ The relief act of 1940 (and likewise the similar act of 1918[5]) was enacted to give the soldier-litigant a shield for defense and not a sword for attack. It was to enable him to serve his country secure in the knowledge that his bona fide civil rights would not be jeopardized in any legal proceeding by reason of his military service. It was not intended to vest him with juridical weapons of offense which he would not have possessed had he remained a civilian. It was likewise not intended that the statutory shield should be used as a screen behind which to engage in legal maneuvers born of policy or of bad faith. In short, it was intended that the serviceman who

[4]Boone v. Lightner, 319 U. S. 561, 63 S. Ct. 1223, 87 L. ed. 1587; State ex rel. Stenstrom v. Wilson, 234 Minn. 570, 48 N. W. (2d) 513; Semler v. Oertwig, 234 Iowa 233, 12 N. W. (2d) 265.

[5]40 Stat. 440, 50 USCA Appendix, § 101, *et seq.*

applies to the court for a stay of legal proceedings under the act must assert bona fide rights and exercise good faith.[6]

■ There is no merit in defendant's contention that the burden of proof is on the party opposing the motion to show that the rights of the serviceman invoking the act will not be materially impaired if his motion for a stay of proceedings is denied. In making the granting or denial of a motion for a stay under the act discretionary, congress did not impair that discretionary power by prescribing any rigid burden-of-proof theory. The discretion vested in the court by the act includes a discretion to determine, according to the peculiar facts of each case, which party, upon any issue or phase of the case, ought to bear the burden of proof of coming forward with the facts needful to a fair judgment.[7]

■ We find no abuse of discretion in the trial court's denial of defendant's motion for a stay of proceedings. It is undisputed that the jurisdiction of the Minnesota court was first invoked. Defendant admitted such jurisdiction had been acquired when he interposed his answer. In ascertaining whether defendant's military service would materially affect his ability to conduct his defense, the court could consider not only the supporting and opposing affidavits of the parties but also their conduct in the light of all the surrounding circumstances. Despite the statements in defendant's affidavit, and in that of his superior officer, to the effect that his military service prevented him from being present at the hearing in Minnesota on June 21, the court, in the exercise of a sound discretion, could draw an inference to the contrary. First we have defendant's conduct which smacks of bad faith. Only seven days after he knew jurisdiction had been acquired in Minnesota, he started an independent action of his own in Illinois. Thereafter he applied to the Minnesota

[6]As to cases bearing on the requisite of good faith in invoking the protection of the act, see Boone v. Lightner, *supra;* Orrick v. Orrick (Mo. App.) 269 S. W. (2d) 153; State ex rel. Clark v. Klene, 201 Mo. App. 408, 212 S. W. 55; Bowsman v. Peterson (D. Neb.) 45 F. Supp. 741.

[7]Boone v. Lightner, 319 U. S. 561, 569 to 571, 63 S. Ct. 1223, 1228 to 1229, 87 L. ed. 1587, 1593 to 1594; Semler v. Oertwig, 234 Iowa 233, 252, 12 N. W. (2d) 265, 275.

court for a stay of proceedings under the relief act without disclosing by his affidavits the commencement of the Illinois action. His conduct in applying for a stay of proceedings in his wife's Minnesota action while he at the same time, in another jurisdiction, was prosecuting against her an independent action of his own upon the same issues can only support a conclusion that he was not acting in good faith and that he was seeking to invoke the immunities of the act as a sword for the primary purpose of putting his wife at a burdensome jurisdictional disadvantage.

Furthermore, the fact that despite his military service he was willing and able to commence an independent divorce action in Illinois, and to attend the hearings in connection therewith, is a basis for a justifiable inference that his military service did not materially affect his ability to conduct his defense in the Minnesota action. The speed of modern transportation leaves little difference in the time necessarily consumed in attending a hearing in Minnesota and in attending a similar hearing in Illinois.

■ It is also not to be overlooked that, once defendant submitted his supporting affidavits, the court could attach significance not only to what the affiants said but also as to what they failed to say as to facts within their knowledge. Such affidavits are to be judged by the ordinary evidentiary tests. Boone v. Lightner, *supra*. In the light of defendant's inconsistent conduct of seeking a stay of proceedings in Minnesota and at the same time prosecuting an independent action in Illinois, the court could consider, as corroborative of defendant's bad faith and as evidence of his unimpaired ability to conduct a defense in Minnesota, that he failed to disclose or indicate in any manner when his military service would permit his attendance at the hearing in Minnesota. Even if we assume that he was unable to indicate when he could appear in Minnesota to conduct his defense, he was at least in a position to offer to have the Illinois divorce proceedings held in abeyance until the prior Minnesota action could be tried on the merits. Basic to the administration of the Soldiers' and Sailors' Civil Relief Act is the proposition that the act is not to be used as an instrument for jockeying for advantageous legal position either as to jurisdiction or otherwise.

The judgment of the trial court is affirmed. Plaintiff is hereby allowed $250 attorney's fees and her costs upon this appeal.

Affirmed.

