McNULTY, JOSEPH P., Associate. Judge.
Appellant, Plaintiff below, brings this-timely appeal from a Final Decree of divorce entered on Appellee’s counterclaim. He raises one point on appeal, i. e., whether the lower court was in error in denying a Motion to Stay the proceedings pursuant to: the Soldiers’ and Sailors’ Civil Relief Act of 1940, Title 50 App. U.S.C.A. § 521. We answer the question in the negative, and affirm the lower court.
The Soldiers’ and Sailors’ Civil Relief Act of 1940, supra, as it is germane-herein, provides that:
“ * * * any action * * * in any court in which a person in military service is' involved, either as plaintiff or defendant, * * * shall, on application- * * * by such person or some person. on his behalf, be stayed * * *, unless, in the opinion of the court, the ability of ' plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his mili- ■ tary service.” (Italics supplied)
*473 Initially, we observe that this Relief Act was passed to give the military serviceman a shield, not a sword. In Luckes v. Luckes,[1] the Minnesota Court cogently expressed the purpose of the Act as follows:
“[It] * * * was to enable * * * [the serviceman] * * * to serve his ■country secure in the knowledge that his bona fide civil rights would not be jeopardized in any local proceeding by reason of his military service. It was not intended to vest him with juridical weapons of offense which he would not have possessed had he remained a civilian. It was likewise not intended that the statutory shield should be used as a screen behind which to engage in legal maneuvers born of policy or of bad faith. In short, it was intended that the serviceman who applies to the court for a stay of legal proceedings under the act must assert bona fide rights and exercise good faith.”
It is to be noted, however, that the Act vests discretion in trial courts to grant or deny a stay of the proceedings, depending upon whether or not the serviceman’s ability to prosecute or defend the action is “materially affected” by reason of his military service. This necessarily involves an element of prejudice, which is essential to the granting of a stay.[2] In this latter regard, the courts have considered and weighed the nature of the case, the issues involved, the extent to which his rights may or may not be “materially affected” by his absence, his availability at trial and the diligence with zvhich he takes advantage of the opportunities to preserve his rights that might have been afforded him during the course of the litigation, in determining whether or not he will be prejudiced by the denial of a stay.[3]
In the instant case, we agree with’ the Chancellor and concur that the Appellant was guilty of bad faith, and did not diligently prosecute his action when he had full opportunity to do so. At the outset, the forum was his choice, and he instituted this action. Secondly, almost two months after filing suit, he received an Order granting his Motion for leave to amend his Complaint. . To date, he has never taken advantage thereof to plead the facts upon which he now seeks opportunity to rely; nor has he' amended his prayer to seek custody of the children of the parties herein, which is the ostensible purpose of this appeal.
 In addition, it is patent from the Chancellor’s Order, entered almost three months after the suit was filed, which Order granted temporary child custody, support monies, alimony and suit monies, that the Appellant theretofore had failed to comply with the provisions of a separation agreement entered into, at his instance and drawn up by his attorney, before the suit was filed. (Appellant, incidently, was personally present, with counsel, during the hearing in which the Court entered the aforesaid Temporary Order.) Failure of a husband and father to abide by an executory separation agreement, particularly as it relates to child support and responsibilities toward the family, ought to be viewed by the courts with a jaundiced eye. When the record does not disclose a reasonable excuse therefor, such noncompliance with a voluntary agreement is presumptive evidence of bad faith.
All told, although Appellant’s suit was pending more than ninety days, during which he was represented by able counsel, and was available to preserve his rights, he *474 failed to take the first, single affirmative step to prosecute his cause, or to protect and perpetuate his record. Indeed, until the Appellee called the matter up for hearing on her counterclaim, more than five and one-half months after suit was filed, no action was taken by either party.
Finally, the record clearly reflects, on the representations of Appellant’s counsel, that Appellant failed to remain in contact with his own attorney. He did not inform counsel when he was leaving, where he was going, where he was when he' got there, nor did he make inquiry of anyone, including his counsel, concerning the status of the litigation. Even after the Special Master, before whom testimony was taken, granted additional opportunity for the Appellant to offer testimony in the cause, his counsel, on November 23, almost nine months after the litigation began, reported to the Court that the Appellant had made no contact with counsel. In consideration of all these circumstances, we hold that Appellant is not now in any position to seek equity nor rely upon the provisions of the Soldiers’ and Sailors’ Civil Relief Act, supra.
Affirmed.
ALLEN, C. J., and HOBSON, J., concur.

. (1955) 245 Minn. 141, 71 N.W.2d 850, 54 A.L.R.2d 384.

. 50 U.S.C.A. App. § 510, which is the legislative declaration of the purpose of the Act; Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587; 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489; and Luckes v. Luckes, supra. See, also, the annotations concerning the Soldiers’ and Sailors’ Civil Relief Act as affecting matrimonial actions, in 54 A.L.R.2d, p. 390, et seq.

. Cadieux v. Cadieux, (Fla.1954), 75 So.2d 700; and 54 A.L.R.2d, supra.